Good afternoon, Illinois Appellate Court, 1st District Court is now in session, 1st Division. The Honorable Justice Carl Anthony Walker presiding, case number 1-9-0-8-8-8, People v. Miles Redmond. Good afternoon, everybody. I'm Justice Walker, and I am here with me today, Justice Hyman and Justice Coughlin. I'd like to ask the lawyers if you could please introduce yourselves. Mr. Harbath, do you want to go ahead? Okay. Assistant State's Attorney Douglas Harbath on behalf of the people. Thank you. Christopher Gerke on behalf of Miles Redmond with the State Appellate Department. Okay. All right. And Mr. Gerke, we'll start with you. How much time do you need today, Mr. Gerke? I'd like to only reserve, let's say, two minutes for rebuttal. Okay. So maybe 10-15 minutes with two minutes for rebuttal, if that's okay with your honor? Sure, that's fine. We usually give everyone 20 minutes, but that's fine. Okay. And Mr. Harbath, how much time do you need? I would say about 10 minutes, just 10-15 minutes tops. All right. That's fine. Again, you'll have 20 as well. But if you do run out of time, if you go beyond the 20 minutes, we'll cut you off, but we will then allow you to finish up any thought that you have, because sometimes it'll go longer because the justices are asking questions. And our policy is that as long as the justices are asking questions, we keep going. And so we don't cut the justices off. Okay. So we'll go ahead. Mr. Gerke, we'll hear from you first. Thank you, your honor. As I may have pleased the court, as I said, I'm here on behalf of Miles Rudman. I'd like to focus primarily on the Fourth Amendment issue with my argument, your honors. In this case, one of four police officers, without a warrant, scaled a at least six-foot high backyard privacy fence surrounding my prime's property, entered his backyard, and made a forceful entry into his home, where they arrested my client and elicited inculpatory statements that were later used against him at his trial. And that warrantless arrest, I'm sorry, that warrantless entry into my client's home and the arrest violated the Fourth Amendment. Since, at least, since Payton versus New York, at least 40 years ago, the United States Supreme Court- Well, Mr. Gerke, just so that I'm clear, your argument here is that the officer does not have a right to peep over a fence? No, your honor. That's the issue, that he doesn't have the right to enter my client's home without a warrant. Okay, so let's, because it's one step at a time. So you agree that he had a right to peep over the fence, and then once the officer saw the gun in the air, after hearing the gunshots, you don't believe that he had a right to enter into the yard? Is that what you're saying? Because it's one step at a time. Yeah, absolutely, your honor. Well, just to be very clear, no, I don't believe, I believe it did violate the Fourth Amendment for him to enter into the yard and enter into the home, to be very clear. The issue that was briefed here is just about the entry into the home, your honor. Well, I understand that, but we're not at the home yet. So, so your position, then, he had a right to do everything except enter the home. That's fine, if that's your position. To be clear, thank you, your honor. To be clear, under Payton versus New York, even if the police, for some reason, have probable cause to believe a crime occurred, they may not violate the sanctity of a person's home by entering it without a warrant unless exigent circumstances exist. So, so, so the question really, is there exigent circumstances here? Correct, your honors. No, no, there's not. Well, I understand the position, but let me ask you a hypothetical that's similar case. Sure. The hypothetical would be that the police officers hear gunshots, and they look at a They can see somebody with a gun in their hand upwards, but they've already shot. They're not shooting. Okay. Within a person's home? Within their home. Within their home. They don't know who else might be there. There might be somebody living upstairs. There might be somebody upstairs. They don't know, but they do know that they see that. Is that, does that qualify for the police to rush into the home? I think that would be a different scenario, your honor, because I think firing a gunshot inside a residence, as you said, there may be somebody upstairs. I think in that case, there might be a concern at that moment that, you know, somebody inside might be in some kind of physical danger. But I think the question here, I think. But isn't it illegal in Cook County to fire a gun in the air? I don't know if that issue is briefed. Even if it is, your honor, illegal to fire a gun into the air. The question here is not, again. No, no, no. But if it's illegal to shoot a gun in the air, you hear the noise. You see flashes. And an officer absolutely sees a man with a gun, and he recognizes the gun. He even describes the gun. Sure. And the person runs, drops the gun, and runs into the house. You're saying, oh, they have to wait, go get a warrant. That is not a circumstances that would require them to proceed immediately. Correct, your honor. What's the difference between that scenario and the one I previously? Well, your honor, in this scenario, the police were, you know, just to be clear, it was New  They were driving around listening for celebratory gunshots. They did hear gunshots. They went to my client's backyard. They saw him holding what they believed to be a gun pointed straight up in the air. But I believe they saw a gun. In fact, the officer didn't. That's different in Horton. He saw a gun. One officer at least saw the gun. Right. I think we might be speaking about two different issues here. If your honor's question is whether or not the police had probable cause, that's one issue. If your honor's question is whether that gave them, whether what the officers observed gave them the right to enter my client's house because that creates some kind of exigent circumstance, that's another question. I think that for the purposes, even assuming the police had probable cause, I believe my client just fired a gun just for the sake of argument. At the point where my client dropped, again, the police officer was looking over the fence. At the point where my client dropped the gun and ran to his house, the police knew that there were no further exigent circumstances at that point. How did they know that? Well, because at that point, well, first of all, they knew that the crime, you know, again, they testified that they were looking for celebratory gunshots. They saw my client pointing a gun into the air. So at that point they knew that the crime when they saw him wasn't a particularly serious offense. But even apart from that. But you can see they saw a crime. Well, I don't. And they recognize and saw a crime in action, right? I disagree with that, Your Honor. But even if they did, again, probable cause. Wait, wait, wait, wait, wait. How can you disagree with that? Well, again, our position that we briefed, Your Honors, is that. Not your position that you briefed, that's a crime. To display a gun in the air in the city of Chicago, whether it's New Year's Eve or not, is a crime. Well, Your Honor, it's not a crime to have a gun on your own property. And it's not necessarily. You can't have a gun displayed out in a yard up in the air. We're going to be clear. It wasn't displayed for all the public to see. He was behind a six foot privacy fence. But even if that is probable cause to commit a crime, probable cause does not justify entry into a home. That's exactly what Peyton says. Even if the police believe there is probable cause. They believe they have probable cause that somebody committed a crime. You still need exigent circumstances to enter the home. And at the moment that my client dropped the gun and ran into his home, there are no exigent circumstances. There is no concern that he posed a danger to anybody in his house while he dropped the gun in the yard. There's no concern that he was going to destroy any property. Again, he dropped the gun in the yard. How do you know that? How do the police know that? You're saying there's no concern, no concern. How do the police supposed to define that? Well, first of all, the police needed to, in this case, Your Honor, the trial court found that the defendant made a prima facie case that there was a Fourth Amendment violation. But it was the state's burden to set forth facts and evidence showing that there were exigent circumstances. And no officer testified that they believe there was any danger to anybody in the home. No officer testified that there was any evidence destruction that might happen in the home. Anything to that effect would be pure speculation. And there was no, there's no clear emergency when you have an unarmed man going from his own yard into his own home. And absent that clear emergency, there's absolutely no reason for a police officer to scale the fence of someone's private property, forcibly enter their home to arrest them, rather than simply get a warrant or even just go to the front door, knock on the door and seek consent to enter the home. That would have been permissible as well. That's exactly what Payton says. Payton says that the home is sacrosanct. The Fourth Amendment has, you know, quote, drawn a firm line at the entrance to the house. So even when the police have probable cause to believe that an offense has occurred, they still need to have exigent circumstances. Well, weren't they making, excuse me, weren't they making these observations, counsel, from a position where they had an absolutely absolute right, if not duty to be to investigate gunshots being fired that they hear clearly? Uh, sure. I mean, the muzzle flashes. Sure, Your Honor. I mean, again, even if they have probable cause to believe my client was holding a gun and just fired a gun, just for the sake of argument. Let's say they believe that my client had unlawfully just fired a gun into the air in his own backyard. The question is whether they can enter his yard and then enter his home and or enter his home to arrest him. I think the answer to that has to be no. Well, even in his own backyard, he doesn't have the right to openly display a firearm in the air. Again, Your Honor. Yeah, I'm sorry to interrupt you, Your Honor. Again, even if they believed that he committed a crime, even if they had probable cause to believe him in a crime, that's not that's not really the question I'm addressing. What I'm trying to convey, Your Honors, is that even if the police have probable cause to believe that someone has committed a crime, that in and of itself is not a does not justify entering someone's the curtilage of their home or or their actual home. Like, for example, let's say a police walk by a window, walk by a person's home and through the window they see them, you know, snorting cocaine or something like that. That by itself would not justify the police just to enter the home to arrest that person. You need to have exigent circumstances or probable cause. Let's back up a second, though. Once someone once a crime has been committed. Yes, Your Honor. And then someone flees. The police then has a right to go into to follow them into the home, correct? Well, if you're talking about the hot pursuit doctrine, that crime has to occur in a public place. So just so just to go back, if we're talking about a situation that's in part of a person's home, if somebody sees someone committing a crime through the window of their own home, that in and of itself doesn't allow the police to go enter into their home under the hot pursuit doctrine or any other doctrine. There needs to be the hot pursuit doctrine to apply. It's exactly what Santana says is exactly what where says that they have to be in a public place. So the question really that that's before this court, I think the primary question is, is whether a person who is within the cartilage of their own home in their own backyard behind a six foot privacy fence, whether that's considered to be a public place for the purpose of the hot pursuit doctrine. And it's arguing that it absolutely is not. If you look at Santana, which was sort of any case directly on point, then that I think Santana is a good is a great case by comparison, Your Honor. The United States Supreme Court case that talked about the hot pursuit doctrine with respect to the threshold of a person's home. So in that case, the office police officers had observed a drug sale at the front door of the defendant's home. They left, came back to arrest that person, that person when they came back to arrest and the person was standing in the threshold of their of their house visible to anybody out on the street. And the police got out of their car said stop police or something like that first ran into their home. They arrested them. That was found that was upheld to be a lawful hot pursuit. But when the Supreme Court emphasized in that case that when the police first saw that person standing in the threshold of their home, they said, quote, she was not merely visible to the public, but was exposed to public view, speech, hearing and touch as if she had been standing completely outside her house. So in the court also emphasizes that the hot pursuit doctrine in that case was specifically justified because there's a concern that she would destroy evidence because it was a drug case. And the concurrence in that case also specifically emphasized that no force was needed to enter the front door because the door was open when they went in. Now here we're not talking about someone standing in the front of their house view to all the public. We're talking about the backyard of a house and not just the backyard backyard enclosed by a six foot privacy. But they saw flashes, and they heard what they recognize as gunshots. Correct. Correct. That they saw and heard. And with my example in the window you said well they should go in there because there could be somebody could gotten hurt. Why would that be any different, whether they're in a window and please see or somebody looks over a fence that they can look over after hearing gunshots and seeing somebody with a gun. I mean, what officer would then go and get a warrant in that situation. Does that make any sense. Every fourth amendment case shows I'm sure your honor is aware is dependent on the specific facts and circumstances. And in this case, we don't have a situation where you know someone's firing a gun in their home we have a situation where the police made an initial limited intrusion, the police officer like for example, kind of on my clients best offense which was a trust technically a physical trespass into a fourth amendment protected property made that limited intrusion saw my client, you know, holding, holding a gun. And so the question is, at the point my client dropped the gun and entered his house whether that entry into this house was justified. Again, even if the police had probable cause based on the muzzle flashes and the hearing of the gunshots of even if that gave them probable cause of my client committed a crime the question is whether or not. First there was exigent circumstances, justifying the entry into the house or a different species of exigent circumstance which is hot pursuit is whether a person in their own backyard is considered to be in a public place as though they are completely outside of their home. Again, the hoppers you doctrine. The whole rationale of that is that a person cannot be go from a place a public place where they may otherwise be lawfully arrested, if there's probable cause and move from that location into their home to thwart and otherwise lawful arrest. So, and in this case we don't have a person who was in a public place if you look at Santana that person was, again, it was not really visible to the public but exposed to public view speech hearing and touch as if she had been standing completely. They're an extinction, a distinction based upon exposing the conduct to the public. And once that conduct is exposed to the public you actually lose for them in protection. And I refer to whether than a crime because there's a, you know, necessarily possessing a gun is not a crime although firing a gun is. Sure, I, what I want to make sure we were clear about here is that we're drawing distinctions between whether someone is in a public being whether it's not someone is in a public place isn't necessarily the same question is necessarily the same thing as whether you did not commit did not perform a search within the meaning of the Fourth Amendment because he didn't have to trespass in any constitutionally protected area. But the question whether or not my client is a public place is a different saying I think that even for example let's let's say I'm not a person had held his arm out the window of his own home and fired into the air and then drop the gun outside his home. Would the police be allowed to just enter his home without a warrant? I don't, the answer is no. I mean that's that's the Fourth Amendment under Peyton says probable cause isn't enough you have to have exigent circumstances. And what Santana says is that you have to be, you have to, you can't be arrested under the pot pursuit doctrine, unless you are in a place where you may otherwise be lawfully arrested, which is a public place, and he was not. The facts are not clear here but once you're in the backyard, firing a gun, your neighbors can come into the window from the houses nearby, if they're on their second floor of their home and they can see what's happening in your backyard. So that's where it comes down to sort of exposing that conduct to the public. I understand what you're saying your honor, I think that I don't think the question is merely whether someone is visible to the public. Right, I think that a neighbor looking down into a person's yard if a police officer was on the second floor of someone else's house and look down into the yard. That wouldn't be a Fourth Amendment search, right, but I don't think that's the same question as whether or not he's you're considered to be in a public place. And what Santana said, they specifically do a distinction between being merely visible to the public and being in a public place. Again, the quote is that she was not merely visible to the public but was exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house. So in Santana it was as though she was basically standing out on a street corner, or in the sidewalk, and the police had probable cause to arrest, they could arrest her. But that's not what we have here. In this case, the police could only arrest my client by physically trespassing into the curtilage of his home by scaling a backyard fence and then making a forcible entry into my client's house. And so, again, in all the other cases that the state sites are completely distinguishable, Santana's distinguishable in where the police saw a drunk driver driving out on a public street, the drunk driver ignored police lights, and police followed him for several blocks and then he tried to go from his driveway into his home and he was arrested at the threshold of his home. So in that case, the illegal conduct was clearly in a public place and he clearly tried to go from a public place into his own home. My client was already in his home under the Fourth Amendment when he was in his own yard, particularly where he was surrounded by a six-foot privacy fence. If there was no fence here, it might be a different question. Well, let's see. I'm quoting Santana, and I want you to tell me why we should ignore the language of Santana. It is nonetheless clear that under the cases interpreting the Fourth Amendment, and then some words are omitted, but what a person normally exposes to the public, even in his own house or office, is not subject of Fourth Amendment protection. That's on page 42. And there's many cases that say the same thing. So he exposed it by shooting, by the shots and seeing the sparks in the air. That was an exposure outside and according to this, to even Santana, that's, I interpret that as saying they're not subject to Fourth Amendment protection in that case, even in his own house or office. I mean, that's the difference between perhaps a Fourth Amendment search and a Fourth Amendment seizure or arrest under the Fourth Amendment. So I think that, again, using the example we've been using, an officer who sees through an open window someone committing a crime in their own house, that observation is not protected by the Fourth Amendment. They're in plain view. It's not a Fourth Amendment search in that situation. Are you saying that a yard can never be considered a public place? Of course not, Your Honor. Of course not. What I'm saying is that a yard... In this case, what would have made it different in your view? I think in this case, the fact that there's a high six-foot privacy fence that none of the officers... They can see over it though, but they can't see over it. I understand what Your Honor is saying. The officers actually testified that none of them could actually see through the fence as you were standing normally next to it, and they can only see over when they actually climbed up on top of it. No, they could see over it by standing on their tippy toes. You're right. One officer did say that he could see over it by standing on his toes. Well, how many more do you need than one, even based on your analysis? Well, again, our argument is not that the officer's observation of my client was a Fourth Amendment violation. That's not the issue. What if it was a chain-link fence? Would that make a difference to you? If it was a chain-link fence, sure. Yeah, because if you could see through it, then a person's more exposed to public view. I think it's a different question. So isn't the issue then the credibility of whether or not you believe that the officers could see from the street the gun and the facts that they testified to that they could see? If they can see that from a place where they have a legal right to be, isn't that the same thing as if it's a chain-link fence and they're standing on the street and they can see in? Just to be clear, are we speaking about the public place issue or a Fourth Amendment issue? I'm saying isn't it a credibility issue? Do you believe the officers could legitimately see from where they were what was going on in the air? We did not challenge the officer's observation of my client at all. My question to you then is, how is that any different from looking through a chain-link fence? I think I'm getting a little bit confused around because, again, if we're talking about whether my client could be observed by the police and whether that was a Fourth Amendment violation, that's one question. And we don't dispute that the police, in this case, we didn't challenge their observation of him over the fence. The issue is whether they could enter his house. The issue is, again, probable cause isn't enough. Observation of crime isn't enough. That's exactly what Peyton says. And Peyton, the court specifically said that when the police believe you have committed a crime, they still can't just enter into your home without a warrant. So in this case, even if the police believe my client had committed a crime, even if they believed he had fired a gun, at the moment he dropped the gun in his own yard and went into his house, at that moment, the question is whether the police were justified in making a warrantless entry into my client's house, even if they believe he committed a crime. Well, I think it's a little bit more than that. Didn't they say, stop, please, drop the gun, and then your client starts running into the house? Yes, Your Honor, that's exactly what happened. They said, drop the gun, and they might have said, stop, please, I don't recall. But either way, again, he was within the confines of his own backyard. It's as though someone moved from one room of their house—under the Fourth Amendment, it's as though someone moved from one room of their house to another room of their house. The question is whether they can enter the house. So again, I think we keep talking about issues, I think, that relate more to whether or not there's probable cause. And it's our position that irrespective of probable cause, even if there's probable cause to believe my client committed a crime, the police still need to have a justification to enter the house. And the only justifications at issue here are exigent circumstances, of which there were none. I mean, with respect to at least whether there's any concern or evidence that he would destroy evidence or pose a danger to anybody inside. And the other issue is whether the police were in hot pursuit, meaning that was he in a place where he could lawfully be arrested? And did he move from that place into his home to thwart an otherwise lawful arrest? So if we find a hot pursuit, you lose. If you find that my client was in a public place where he would otherwise be lawfully arrested, then correct. Then that would be—then we would lose that case. But I don't think this court can find that. I'm unaware of any case where someone was found to be in a public area when they're in their own backyard, hidden behind a fence. No, but we've already gone through that. I mean, that's not—you say that's not true. Let's assume there's probable cause because somebody—they've identified someone who recklessly discharged a firearm. Okay, sure. Okay. And they say, stop, police, drop the gun. And the individual runs. He may run in the house. He may go out the back door and never be seen again. They don't know. And so it would seem that hot pursuit is involved here, which would be an exception to what you're arguing. Let me give a different example, Your Honor. Again, I keep using this—I keep using this example of looking through the window because the yard is considered part of the curtilage of the home. It's considered equivalent of the home, right? And so when you—let's say an officer had looked through a window and saw my client firing a gun out his own window, and he dropped the gun outside his house. And then he ran into a different room of his own home. So it went from his dining room to his bedroom. And the officer witnessed that from outside the house. The officer would not be allowed to enter the house. That would not be hot pursuit because my client, even though he might have been visible through that window, I don't think being inside the confines of your own house is considered to be a public place where you can otherwise be lawfully arrested. Again, it's a longstanding Supreme Court case law, right, that if someone—police have probable cause to arrest and you're out on the street, they can arrest you. They don't need a warrant, right? But the only reason they can actually enter your house to arrest you when they have probable cause is if they either have a warrant or an exception applies. And I don't think that, you know, for example, the hot pursuit doctrine applies to somebody who's already within the confines of their own house and the curtilage of their own home, particularly where they're surrounded by a high fence. Even if there are situations in which someone might be able to look over it, I don't think that necessarily is considered to be a public place. Go ahead, John. As you said before, it depends on the circumstances. Sure. Like, for example, if it was a chain-link fence, which anybody could see through the fence, or if there was no fence, perhaps that would be a different situation. But that's not what we have. I don't think it has anything to do with the fence. I mean, you said that they have probable cause. You said you—you're not going to see— Well, we dispute that, but assuming they did. Assuming they did. Right. So they have probable cause, and they were pursuing what was going on here, and they see someone—one of the officers sees a gun in this man's hand and says, stop, police. As he jumps over the fence, the man drops the gun and runs. Right. And you're saying he's supposed to stop, go get a warrant, that that's not hot pursuit. Correct, Your Honor. Again, I think the issue is once my client has dropped the gun and gone into his own home, what the police have to do at that point, right? And so the question— How do you know there's not more guns in the house? How do you know what's going on in the house? They don't know anything. I think the state would have to present evidence that that was a legitimate concern. I don't know. I don't know that—and first of all, it's not unlawful to have guns in your own house. It's unlawful to recklessly discharge a gun. We've already gone through that. So we have a crime. We have an individual holding a gun up, having trouble firing it. We have identification of the gun. The judge made that clear. We also have a credibility question that the judge made determinations on that we have to accept. So, again, I'm kind of stuck on the hot pursuit. I understand, Your Honor. I think what I really want to make sure that we're clear on for how this court analyzes this case is that there's a distinction between probable cause that someone committed a offense and whether or not they're exigent circumstance. I suppose there are situations when the facts that show probable cause also show exigent circumstances. But the fact that the police believe my client committed a crime is not itself an exigent circumstance unless that showed that he was going to cause some danger to somebody else inside the house or was going to destroy evidence or under the hot pursuit doctrine, whether my client moved from a place that is considered to be a public place under the law and moved from that place into his own home to thwart an otherwise lawful arrest. So I think that, I mean, just to be clear, I'd also like to emphasize or like to bring another issue up to the court is that I think the guns in this case should have been suppressed because I don't think the police, again, at the moment my client had dropped the gun and went inside his own home. There are four police officers on the scene. Again, it might have been different if there was no fence or if there was only one officer and a warrant wasn't feasible. But there are four officers on the scene. My client's in his own home. The gun's been dropped on the ground outside. My client's nowhere near it. The question is, can the police then not only enter his house, but can they even scale the fence and enter his yard? They already did. He was going over the fence when he said to drop the gun. Well, he was holding onto the fence and looking over. They jumped over. He went over the fence when he said police, drop the gun. He went over the fence only after. First of all, that officer is not the one who actually went over the fence. So one officer looked over the fence, said drop the gun. My client dropped it and then told another officer to go get my client. That other officer is the one that scaled the fence. But just to be clear, the issue of whether the entry into the yard itself was a Fourth Amendment violation, if this court would find that dispositive about whether or not there should be reversal in this case, we ask for additional briefing on that issue. Unfortunately, pro bono counsel didn't raise that issue. I just brought on the case for oral argument. So that's something I just want to bring to the court's attention. But it's not necessary to reverse in this case. Again, there's no question in this case that the police made a forceful entry into my client's home without a warrant. The only question is whether they had exigent circumstances. Or the hot pursuit doctrine applies, which is a species of exigent circumstance. And I'll emphasize, too, that even with the hot pursuit doctrine. You're out of time, Mr. Gerke. I'm sorry, Your Honor. Let's get to a point here. So in order to engage in a warrantless search, there needs to be probable cause, correct? Correct. Okay. And there's probable cause when there's reasonable suspicion that a crime has occurred, correct? Well, probable cause and reasonable suspicion are different. Just to be clear, it's not just probable cause. Okay. I'm going to use probable cause when there's a belief that a crime has been occurred. Right. That's one factor to do an unreasonable search. Okay. So the crime that the officers believed that had occurred was that a gun was fired. Assuming that is probable cause. Okay. So it seems as though that those are the two things that get you to where this thing appears to be going. So I want to give you an opportunity to respond to that, though. Yes. Thank you, Your Honor. What I want to be really clear is that it's more than just probable cause. Probable cause is one of two elements the police must have. So probable cause that someone commits a crime is a necessary prerequisite to a warrantless search or a warrantless seizure or a warrantless entry into the home. But the probable cause plus an exception to the warrant requirement if you don't have a warrant. And the exception that applies to homes, the only one that applies to homes, is as an exigent circumstances of which hot pursuit. So probable cause in and of itself is absolutely not sufficient to enter somebody's home without a warrant. And it hasn't been since the 1980s. So I see, Your Honor, you said I was out of time. So I'll save the rest of my argument for rebuttal, if that's okay with Your Honor. Thank you. Mr. Harvath, we're on you. Thank you. Thank you, Your Honors and counsel. Good afternoon. I almost said good morning. Assistant State's Attorney Douglas Harvath on behalf of the people of the state of Illinois. May it please the court. I'd like to start off with a threshold argument. And it appears that toward the end of counsel's argument that this started to go into a request to suppress the guns themselves. And I need to point out very up front that defense counsel in the trial court conceded that he had no legal basis to suppress the guns themselves. And that's why we've made this threshold argument that under the theory that this court is obligated to refrain from reaching constitutional claims, unless it's absolutely necessary. And as a last resort, without the defendant's post arrest statements, the evidence against him was still absolutely overwhelming. As we've discussed during counsel's argument. Two volleys of gunfire, including one when the officers were behind the fence and then you see muzzle flashes from behind the fence and then they do look over. Two police officers see the defendant holding a gun up and racking the slide apparently to clear a dam. I mean a more compelling argument for probable cause that he's just committed reckless discharge of a firearm is difficult to imagine. Did the officers actually see him fire the gun? No, Your Honor, they did not. So in this case, though, we don't know if he fired the gun or if someone else in the yard fired the gun. Is that correct? I think so, but I think it requires a suspension of disbelief for the defendant to make that argument. He was the only one seen with a gun. He's the only one seen dropping a gun. And then the gun was recovered as well as another black gun that was apparently on the ground. There's just no other evidence that anyone else was involved. And I would reiterate the defendant does not challenge the trial court's credibility determinations in this appeal. But I would point out in any event that his Fourth Amendment claim is without merit because the officers did have ample probable cause to believe. Not merely that he possessed the gun, as Justice Hyman pointed out, for that reason, Horton is in opposite, but that he just dangerously fired it into the air. Although possession of a firearm might not itself be a crime for those entitled to possess one. It is a crime for someone to recklessly discharge the firearm, regardless of whether or not they're entitled to possess the firearm in the first place. In this case, the officers. He was he was. I'm sorry, I couldn't hear you. I think you're frozen. I'm sorry. I'm frozen. So I think Justice Hyman is frozen. Okay, I'll just continue. I'm sorry. So, upon seeing the defendant with the gun he promptly dropped it and fled into his residence. So this wasn't just possession of gun it was brandishing a gun, not concealing it. So equipped with probable cause, according to long standing Fourth Amendment jurisprudence, the police were permitted to pursue the defendant into the residence to affect his arrest. And this was not in a public area. He was never in a public area he was in his yard, which was surrounded by a six foot fence. Right, and the fence does not initiate the public place nature of the backyard and Santana itself actually identified the yard surrounding person's property as part of the curtilage of property, and it specifically issued connecting the common property or the common law of trespass. It is the sort of barometer for whether or not someplace, a place is considered a public place. And that includes someone's backyard. And there's there, there are lots of cases, including us Supreme Court cases and one of our brief called Sorolo, which was a Fourth Amendment privacy case and that was where the police were had fought were flying at 1000 feet over the person's property and he had two foot fence and then a 10 foot privacy fence in the US Supreme Court said, and I'm quoting the mere fact that a person has taken measures to erect fences or restrict views of his activities does not preclude police officers observation from public public vantage point, excuse me, where the police have a right to be, and which renders the activities clearly visible. And I think that's what Justice Cogman was pointing out he clearly was visible, whether he had to be on his tippy toes or he had to put his foot in the back yard, and not only is he visible. The, this is late at night, the muzzle flashes are obviously visible and the gunfire is visible public place is not defined by the common law of property it's any place where and this is Santana, where a person's exposed to the view of the public speech or hearing, and it includes private property including the privilege of a person's home, and the privilege includes the yard surrounding the home. So taken to its logical conclusion the defendant's argument argument would mean that any person is free to sort of commit any number of felony offenses in his backyard while he's visible to others, but the police are powerless to properly arrest him. If he flees inside, but the Supreme Court in Santana and our own Supreme Court and we're held precisely the opposite. A defendant cannot find sanctuary in his home to to defeat a proper arrest that is supported by probable cause. And I know this this wasn't brought up on counsel's argument and it wasn't brought up brought up and defendants initial brief and I understand Mr. So, I understand that completely. But there was no address in Harris, and I think New York versus Harris. It really renders this this argument almost completely moot. Even if the police had erroneously even if they had committed a violation of Peyton his post erase post arrest statements are simply not subject to suppress and where the police had probable cause to arrest him. And I think it's clear based on the the evidence that was admitted both of the suppression hearing and at trial that there was a lot of ample probable cause New York versus Harris and tell that even an arrest made a door arrest made during a warrantless non consensual entry of a home does not require suppression of a defendant subsequent voluntary statement made outside the home. As long as the police have probable cause to arrest them. And he's never made any claim that his statements were not voluntary, not the one that he was made as he was being arrested or shortly after his arrest, and certainly not the one that was made, you know, probably an hour or so later at the police station to the detective after he was Miranda. The rationale for the ruling Harris is that as long as the police have probable cause to arrest a defendant. His statements are neither the product of the improper arrest, nor the fruit, having been arrested in the home, as opposed to somewhere else. So, so for those reasons, New York versus Harris. Also proposes the defendants arguments. I want to make clear this. Mr Harvard, let's come back to your hot pursuit argument, because counsel has argued that hot pursuit applies where an individual leaves a public place and goes into a private place or private residence. This is a case where the individual was in a private place his own backyard and simply ran into his home, a backyard that's surrounded by a privacy fence. So, how do you think that applies here where counselors clearly arguing that it doesn't that it wasn't a hot pursuit because he didn't leave a public place to go into a private place. Well, and people versus Santana itself, US Supreme Court specifically rejected the notion that private property cannot be a public place. I fully admit this is private property just like I can see my neighbor's backyard from where I'm sitting on my second floor window. That's private property, and the police have every right just like any, any citizen Jane or john citizen would have the right to look into someone's private property. And when you're doing something exposing that language that counsel is using comes from Santana. Right. I guess it's a patent. Patent is a case that requires without exigent circumstances you can't just go in and affect an arrest. It has nothing to do with the hot pursuit doctrine Santana created a sort of an exception so that you can pursue is the fleeing felon rule, you can engage in hot pursuit and flee, excuse me, pursue a suspect into a his own private residence. If you have probable cause, and if the pursuit commenced in a public place in a public place Santana specifically said this is any place that visible to the public. It includes a person. So now your argument is going to the point that the backyard was a public place that's what you want us to find correct. Well if this court reaches the issue, and then he's, I don't think the court needs to reach the issue, because it's, it's unnecessary to resolve in the case number one. Also, necessary. I beg your pardon, just as Simon just asked why does this court not need to reach that issue. Well, for two reasons, because it's the defendant with the evidence even without his statements is overwhelming that he possessed a gun. And number two under New York versus Harris, even if it was a violation. So wait wait wait just a second because your first answer first part of your answer anyway, was that nothing matters because he possessed a gun. Is that your answer. No, no your honor. And so why we don't need that that constitution. I'm sorry, I should have been more clear it's because it will be a spoke I assume on that issue you misspoke and that's okay if you did. No, no, I know you're on I think I just didn't get to finish my point is it's any admission of these statements, even if erroneous would be harmless beyond a reasonable doubt. And for that reason, the court does not need to in the Supreme Court repeatedly caution the appellate court to refrain from reaching constitutional claims when it's not necessary to resolve the claim. And in this case, the evidence of defendants guilt was overwhelming, even without the statements and it wasn't sort of the cornerstone of the evidence against the defendant, it was the fact that he was seen holding a gun and racking the slide. That's our just sort of threshold argument off we've spun off the original question was, so you're asking this court to find that the backyard was a public place. Is that correct. That is correct. Okay. Yes. And because it was a public place and the defendant was many cases. There are many cases that don't hold that that a person's backyard is not a public place. Yes, it's part of the house. Yes. It is part of the cartilage, but Santana said that the cartilage of a person's house including they actually use an unquote, including for example the yard surrounding the house that's in Santana, that's a public place even though it's private property. I think that the defense is confusing the difference between common law property law and trespassing privacy versus the hot pursuit. Yes. One second, because you just turned all of that upside down. You're saying that the cartilage of a home is never a private place. That's kind of what you just imply. So therefore the better. No, you're on I didn't say that it's private property. It is private property. Okay. Under Harris. Excuse me, I beg your pardon. Under Santana. It is for the hot pursuit doctrine, it is a public place. I noticed it's kind of a. It's actually a private it's private property, but for the purposes of hot pursuit. The backyard is a public place. That's what you're telling us. That's exactly what I'm saying. And you believe that says that correct. Yes, it does. What, where are you what paragraph are you reading on Santana, what, what, what, what. I'd have to visit Santa doesn't say exactly that. It actually I mean there's a whole. If you're going to indulge I'll try to find the exact citation. There's a lengthy sections in the Santana opinion itself that go on paragraph after paragraph, going out of this way to just make the distinction between private property and public places. And it stated and unambiguous terms that a private property under under the common law of property or trespass has nothing to do with the public place calculus under the hot pursuit doctrine. So, private properties is. Well, let's get around forget that issue because I don't think that's going to decide this case. It's still, you're, you're saying that the yard. It was a backyard. Is that correct. Yes. Backyard. Backyard, which is not in front of the house is in the back of the house. There isn't back of the house so that's even shows more pretense pretensity to have privacy, because it's in the back of the house. And it has a high fence. And so, how. What is visibility me. I mean, if it's it's not visible. Yeah, I mean, if somebody has to go and tiptoes or jump up and in order to see some, that's not visible is it. What is under on the California versus Sarala. In that case they were able to fly a private airplane police flew a private airplane 1000 feet over the defense that's a different backyard. And they were able to do it. But that's a different case had to do with airplanes and other things and we're not going around as you can fly an airplane over someone's backyard and look into it, you can certainly go on your tippy toes over the fence. No, no. I disagree with that there's no cases use. There are cases that have found that backyards are sacred say, right. Usually in every case in Santana, or since that case with the airline, the California case, no court has found that it's constitutional to otherwise that they can go into somebody's yard. No, there's plenty of no that's that's different. No one went into his yard that would be a trespass three or four, Fourth Amendment trespass. He looked up and do his. They jumped up in order to see him with a gun they jumped up to a private yard. They do the same thing that you are walking down the alley. No, no, no. That could be a peeping Tom to, I mean, you know, what's somebody doing hopping up and down in an alley is somebody's backyard backyard Why do you have a backyard and you have a fence around it. That shows that you want privacy, if they didn't have the fence that's one thing, but they, there's an intent here. I wanted. Go ahead, I guess I disagree. So, Rallo is an 1886 Supreme Court case that doesn't support that your honor I respectfully that's the there's nothing preventing the police, when they have a right to be in a location where they are, and to be to look over the fence, where they see especially when they see gun flashes and then they hear gunfire to values of gunfire. Why couldn't they go get a, why couldn't they get a warrant then, because they saw the man running to the house. They dropped a gun, and as Council noted, and so we're. What's the problem here. Well they had probable cause to believe that he had just told us probable cause is not the end of the discussion. Right, and it's under Peyton, you need exigent circumstances under Santana. It's not exigent circumstances it's probable cause, plus public place. Well, if you don't have a public place, and if we don't have a public place you lose right, if it's plus probable cause plus. And we say we don't you, that's not a public place you lose is that right. I'm sorry, Your Honor, I don't lose under New York versus Harris. No, no, no, I'm just saying, we don't agree with that. If we distinguish that, if we don't agree with that, from your argument, we don't agree with that. I'm sorry Your Honor. We can't hear you Justice Simon, your internet is bad. I beg your pardon, I couldn't hear you. Now you're out totally Justice Simon. And then you would lose. I apologize I didn't, I didn't hear that. We can't hear you. Your camera has gone out in your voices is extremely slow. There is. Try it now it looks like you're back. Try now Justice Simon. I'm sorry, yes, my internet. You're good now. I apologize. I apologize. From my private place I can see you clearly. Okay. I can too. If we disagree with Harris, and I understand but let's say we distinguish it. Then you would lose under your argument. I know no judge I'm sorry I because I mean there are two issues here I mean if you're saying if I lose on the hot pursuit issue. And then if I also lose on the on New York versus Harris well of course I lose. If this court. And that's assuming this court even reaches the constitutional claim to begin with. I guess yes. I just don't think this is a situation where the police are supposed to sort of. They just observe someone shooting a gun off in the backyard and they're supposed to go get a warrant before they go the rest. That's the very reason for the hot pursuit doctrine. It doesn't require exigent circumstances to believe for example that he's got more guns in the house, or he's going to hurt someone. That's that Peyton in order to get it on Peyton for a warrantless non consensual entry, you need exigent circumstances but that Peyton is different from the hot pursuit doctrine pursuit of our officer makes personal observations that rise to the level of probable cause, and they initiate an arrest from a public place so with regard to that issue that's the real issue is whether or not this court finds that his backyard was a public place. And under legions of cases, what you expose yourself to, even on your own private property if you're doing it in such a way that you can be seen or heard. You are deemed to be in a public place for the hot pursuit doctrine regardless of whether or not it's private property. So for those reasons, those reasons. Yes, this court to affirm that the defendants conviction and from the trial courts judgment denying his motion to suppress. Thank you, Mr. Mr. Thank you. Sorry to interrupt you. I think it's pretty I think it's pretty clear from where the way the direction of this argument is going is I think the real key issue here in this case is whether my clients fenced in backyard is a public place for the purpose of the hot pursuit doctrine where I want to make very clear is that you know counsel cited to other Fourth Amendment search cases cartilage you know airplanes flying over. I don't think that that's the same thing as being a public place I'm sure there's overlap between reasonable expectations of privacy and whether that's a Fourth Amendment search and whether you know that under the law, a place is considered a public place. But I just want to make sure that that, you know, whether or not you know a plane flying over the top of somebody's fence and that would be true if someone had 100 foot high fence. I think that you know even if the police didn't technically commit a search by looking down from an airplane. I don't think that anybody would consider that, you know, I think the person who's backyard that has been considered to be a public place, you know, and it's a non public place for the purpose of the hot pursuit doctrine, then there was a Fourth Amendment violation here, and my client statement should be suppressed, I'll address the fact that he's knowing knowingly exposing this gun in the yard, whether it's public or private, he's knowingly exposing it to public view. Well, I don't necessarily agree with that your honor I think that if you're like for example I think a person could probably under the Second Amendment, have a have a gun in their own backyard in a fenced in area that people walking by couldn't see without taking some extra effort to conceal but not in this not in the city of Chicago you can have a gun openly concealed you know I'm not fully up on the concealed carry law but I don't know that it applies when you're inside your own home or inside the cartilage of your own home. What about when you're knowingly exposing a firearm outside your home in a yard. Someone else can see from a right they have from a place they have the right to be sure and just to be clear, we're not arguing that the police observation of my client was an unlawful Fourth Amendment search. The question is whether or not my client was in a public place which I don't know my question is whether he was knowingly concealing knowingly exposing the gun from his air, that's my question. I'm going to knowing is a bad choice of water. I mean, assuming he had a gun in his backyard and his, you know, with a six foot privacy fence around it. I don't think that he was exposing it to public view, I mean I think that again again that's not the standard in Santana, the standard Santana isn't just anything visible to the public. I mean, I, you know, I hesitate to repeat myself again but what the court said the reason that person was considered to be in a public place in Santana was because she was not merely visible to the public, but was exposed to public view speech hearing and touch as if she is as if she had been standing completely outside our house is equivalent in the court's mind, where that person was standing, but they were standing outside their house and also draw. What about this. What about if you believe that he fired that gun from his yard. If I believe you fired that gun from his yard. I'm sorry I don't understand your honor's question, if he fires the gun in a yard. Is that a crime. Assuming he fired their gun from the yard and assuming that is a crime and assuming the police have probable cause to believe that's a crime. Well didn't they have probable cause to believe that. Well, our argument is that merely argument is that it wasn't that's only a reasonable suspicion but even assuming it was probable cause. Right, we still need to show this, we still need to have been able to lawfully arrest him in the spot where he was before he went into that he had to be in a public place where he would otherwise could be lawfully arrested. And before he moved from there into his, into his own home. And so I mean we're acting like the opposing counsel, with all due respect to Mr Harbis acting like being in your own, your own yard, especially within a fence is somehow not being in your home the Fourth Amendment says otherwise I mean for the curtilage of the home is part of the is considered part of the home for Fourth Amendment. So had he not ran into the home. You agree that he could have been arrested in the backyard. No, I don't agree with that your honor unfortunately that issue wasn't raised but I think the only way they could get to him. I think scaling offense to go into someone's backyard is equivalent of going into through someone's door of their yard. I think for the purposes of the Fourth Amendment that Mr Harbis was talking about the trespass analysis that doesn't apply. All those cases are outdated by now I mean unfortunately it wasn't briefed in these, in these cases but if you look at USB Jones, which was a GPS tracking case on a car or Florida versus hardiness which was a police dog sniff in front of a house, a physical trespass into a Fourth Amendment protected area does implicate the Fourth Amendment, and you're distinguishing a front porch from a yard. Why, because when we're talking about, again, this is stepping back from you know whether or not the Fourth Amendment search whether it's considered a public place in Santana, a person was visible from any to anybody on the street from her front door from her front doorway, as though she's been standing completely outside her house here we have my client was not visible to anybody standing out in front of his house he was behind his house, and I was behind his house he's in his own yard which is the curlers home, and not only that he had a six foot privacy fence surrounding his home so I don't know if he's visible to the police officer looking over the fence where he has a right to be then you lose. No, Your Honor, I think that I think, I think that if I think there's a distinction to be made between if there's a hypothetical scenario or scenario where someone could be seen by a police officer does not necessarily mean they're in a public place if you look at somebody through their own window of their own home I don't think being inside your own home would be considered a public place. And so this is for the same reason I don't think necessarily while looking over your someone's fence even if you're not touching the fence, you know, I don't think that I think anybody would would not expect their own fence in backyard because they're the public place that anybody could just leap over or look into or walk past. I think that I and again I want to draw a distinction between anybody it's whether the people who are making the observations. So if you've got somebody who's three feet tall I might agree with you but if you've got one who can legitimately see into a yard isn't that a distinction. Sure. And again, I don't think that whether or not something is a public place is dependent on whether one officer was able to look over the fence. I think they can make the observations from being in a public place. No, Your Honor, I don't think it is again let's let's go back to looking through the window of somebody's home if you could have a police officer observed somebody through the window of their own home committing a crime that observation is not a Fourth Amendment search. Okay. And you've made that argument you've been doing that we don't have to repeat it. Okay, sorry. So, let me just speak for a second. This is language from Santana on page 42. Okay. A public place includes areas where an individual is exposed to public view speech hearing and touch. As, as if he had been standing completely outside his house. Right. So, so it sounds like Santana may be describing the backyard as a public place. I think maybe perhaps if there wasn't a large privacy fence around the around it then maybe then maybe that would be true I mean this is, you know, this is a fact dependent scenario there aren't a lot of cases that actually describe what is considered a public place they're not public place there are cases that discuss cartilage or places cases that discuss, you know what a Fourth Amendment searches but I think that this is a it's an analysis this court is going to have to perform but I don't think I don't think anybody who has a six foot privacy fence around their backyard consider their home, then while they're in their own backyard to be considered that a public place regardless of somebody could peek over it, especially considering that the cartilage of a person's home is considered part of their home for the Fourth Amendment. I was exposed to public view, your argument is that it is not because of the six foot privacy fence. Correct. And I think it's more than just a potential to be able to see it in public view again it's my client, you know he wasn't exposed to public touch. You know he wasn't exposed to public view speech hearing and touches if he's standing completely outside his house. He wasn't outside his house he's in within the cartilage of his own home, and he was behind a six foot privacy fence. Again, that's an analysis this court is going to have to do to determine whether or not that is considered to be a public place where, you know, where a person can be arrested, you know, well, despite being within the cartilage of their own home without a warrant. I think the answer that under the Fourth Amendment is no. Under, under the established case law in this case, and if I can just briefly adjust the New York versus Harris argument. I think the opposing counsel kind of overstates that case that case does not say that any statement made after an illegal arrest is automatically admissible. I mean that case the only question was whether there's a per se rule that an illegal arrest inside a house means that any statement afterwards is in the mess from the court said no it still has to be a connection between the legality and the illegal or unlawful arrest in a person's home, and the actual statement that may make that they made and then we have that here the statements were made in his own backyard which is still the cartilage of his home after an illegal arrest in his home, and he then he repeated those statements a couple hours later in a police station so that the tape is, there's no sort of attenuation here and that was the state's burden to prove attenuation I don't think they present any evidence to that. So I don't think New Yorkers New Yorkers hair certainly doesn't say that even if there was a Fourth Amendment. In this case that even if there was a fourth amendment violation in this case that his statements, you know, somehow couldn't be suppressed or shouldn't have been suppressed. And I think. Oh, and just briefly, you know, I just want to briefly just harmless error. The. Just to be clear, there's a distinction between sufficiency of the evidence and harmless error, especially harmless error beyond a reasonable doubt it's the state's burden to prove beyond a reasonable doubt that had the statements been suppressed. You know, there wouldn't have been a change in the outcome of this trial, and in there for if, if, if there might have been some kind of different outcome then then that's all that's required to find there wasn't harmless error beyond a reasonable doubt. So in this case, this is a gun possession crime my client admitted to possessing a gun. I mean think that by itself. You know, would be sufficient to show that there might have been a different outcome, particularly with the state didn't present the actual gun at trial. They didn't have proof that that gun that item that my client had even fired a shot my client testified that other people were shooting a gun, there was a second gun. found at the scene. And so, just to briefly address that issue again you know in a gun possession case a defendant's admission to possessing a gun where a gun isn't even admitted into the evidence, I think is more than enough to say that that's not, you know, a harmless error beyond a reasonable doubt. And so unless they're you're honest have any other questions about any of the other arguments we've made, and respectfully ask that you reverse my clients armed visual criminal conviction and remand for a new trial with a statement suppressed. Thank you both for your excellence excellent briefing excellent argument we appreciate that. Okay, have a good day.